IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN GALDO, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-5831 |
| | : | |
| PPL ELECTRIC UTILITIES | : | |
| CORPORATION | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                    **February 5, 2016**

This is a Fair Labor Standards Act (FLSA) and Pennsylvania Minimum Wage Act (PMWA) collective action asserted by Plaintiffs William Clair, Jamie Connolly, John Doherty, Kevin Ehritz, Thomas Gurgick, Jr., George Knebel, Ricardo Maderas, Jr., Michael Murphy, Pamela Shinsky, Harold Spiess, Jr., Kenneth Steward, Gregory Tenley, and Stephaniejane Afalla (Villaneuva) against PPL Electric Utilities Corporation (PPL) for failure to pay the appropriate overtime compensation. PPL now moves for summary judgment against all Plaintiffs, or, in the alternative, decertification of the class. For the reasons set forth below, the Court will deny PPL's motion to decertify. The Court, however, will grant summary judgment in part and enter judgment in favor of PPL as to the FLSA claim asserted by Clair, Ehritz, Spiess, Steward, and Tenley only. The balance of PPL's motion will be denied.

## LEGAL STANDARDS

Certification of a FLSA collective action proceeds in two stages. Initially, the court makes a preliminary determination as to whether the named plaintiff has made a "modest factual showing that the employees identified in the complaint are similarly situated." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (internal quotation marks and citations omitted). The second and final stage occurs after discovery and may be trigged by the plaintiffs' motion for certification, a defendant's motion for decertification, or both. *Id.* at 243. At the

second stage, the court must make a conclusive determination as to whether each opt-in plaintiff is, in fact, similarly situated by assessing "all the relevant factors." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). Such factors include "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.* at 536-37; *see also Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, No. 10-948, 2011 WL 6372852, at *3 (W.D. Pa. Dec. 20, 2011) (suggesting a court should consider, in determining whether class members are similarly situated, (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations). "Being similarly situated does not mean simply sharing a common status . . . [;] [r]ather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala*, 691 F.3d at 538. At the final certification stage, the plaintiffs bear the burden of proving the class members are similarly situated by a preponderance of the evidence. *Id.* at 537.

Summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). To defeat

summary judgment, the non-moving party "must rely on affidavits, depositions, answers to interrogatories, or admissions on file" to show there is a genuine issue of material fact. *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

The parties agreed via stipulation to conditionally certify a collective class pursuant to 29 U.S.C. § 216(b), consisting of all individuals employed as "System Operators" or "Senior System Operators" in PPL's Transmission Department and Distribution Control Center during any workweek since October 14, 2011. PPL now argues the opt-in class of 13 members should be decertified as the class members have different job titles, roles, salaries, and responsibilities, and they report to different managers.

The Court is satisfied, however, that these class members are similarly situated for certification purposes. First, all class members have a substantially similar employment setting. *See Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 644 (S.D.N.Y. 2013) (refusing to decertify a class of sales managers despite the defendant's assertion that plaintiffs' testimony revealed their job duties varied based on "season, location, store volume, and store type" as the class members engaged in a "fundamental mix of similar duties"). All members are employed by PPL in two departments, at one location: they are System Operators (SOs) in either the Transmission or Distribution Department at PPL's headquarters. Def.'s Statement of Undisputed Material Facts [hereinafter Def.'s Statement] ¶¶ 2, 75. The difference between the two departments is the level of voltage each operates. Def.'s Statement ¶¶ 63-65; Pls.' Resp. to Statement of Undisputed

Material Facts [hereinafter Pls.' Resp.] ¶¶ 63-65. SOs in both departments interact with field crews and troublemen. Def.'s Statement ¶ 66; Pls.' Resp. ¶ 66. Further, all class members are trained on how to utilize and must follow—with a disputed amount of discretion and independent judgment—Operating Instructions (OIs), which set forth procedures for conducting their jobs. *See, e.g.* Def.'s Statement ¶¶ 12, 24, 25, 26; Pls.' Resp. ¶¶ 2 & n.3, 3.

Second, while there is some variance in the class members' salaries, the class members advance the same claims: they were not appropriately compensated for overtime work under the FLSA and the PMWA. Compl. ¶¶ 15-18. The class members also seek the same relief: pay owed. *See id.*

Third, the SOs are subject to similar circumstances of employment. PPL classified all SOs as FLSA overtime-exempt under the same company-wide policy. *See* Pls.'s Opp. to Mot. for Summ. J. Ex. 8, at 21 (Robert J. Carosiello Dep.) (stating PPL enacted a company-wide change to its overtime compensation policies for its approximately 3000 salaried employees in 2009). Indeed, PPL raises an affirmative defense on that basis. *See* Answer 7 (alleging plaintiff and members of the putative class are exempt employees under the FLSA and "Pennsylvania Wage Laws"). PPL also compensates Plaintiffs for overtime hours worked in the same manner, on either a straight time basis or by 1.2 times rate of pay. Answer ¶ 16. A common, allegedly unlawful policy "weighs heavily against decertification even if some disparate factual and employment settings do exist." *Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372, 381 (W.D. Pa. 2011). *Compare Garcia v. Freedom Mortg. Corp.*, 790 F. Supp. 2d 283, 287 (D.N.J. 2011) (denying decertification on the basis that the plaintiffs' similar job duties, responsibilities, and compensation structures; treatment by the defendant as exempt from the FLSA; and common claim of failure to pay overtime compensation, outweighed any differences), *with Jarosz v. St.*

*Mary Med. Ctr.*, No. 10-3330, 2014 WL 4722614, at *7-8 (E.D. Pa. Sept. 22, 2014) (decertifying a class where the plaintiffs held positions in different departments under different supervisors, and each department created its own procedures for implementing the challenged employment policy), *and Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2014 WL 1317595, at *18 (W.D. Pa. Mar. 31, 2014) (decertifying a collective class of older-aged workers who alleged they were disparately impacted by company-wide RIF implemented by top-level management and sought same relief in part because each class member was selected for termination on a decentralized basis at the discretion of a local manager). Upon consideration of the relevant factors in the context of this case, *see Zavala*, 691 F.3d at 536, the Court is persuaded all members of the proposed collective class are similarly situated for the purpose of their FLSA claims. Therefore, the Court will deny PPL's request for decertification and will certify the class members as a class.

PPL also argues summary judgment is warranted as to Plaintiffs' FLSA and PMWA claims because the undisputed facts establish Plaintiffs were properly classified as exempt under the FLSA and PMWA. The Court disagrees.

Both the FLSA and the PMWA entitle an employee who work more than 40 hours in a workweek to overtime pay "at a rate not less than one and one-half times the regular rate at which [she or] he is employed," 29 U.S.C. § 207, unless the employee falls within an exemption, *see* 29 U.S.C. § 213; *see also* 43 Pa. Stat. § 333.104(c) ("Employe[e]s shall be paid for overtime not less than one and one-half times the employe[e]'s regular rate . . . ."); *id.* § 333.105 (listing exemptions to the PMWA, including an administrative exemption); *Baum v. Astrazeneca LP*, 372 F. App'x 246, 248 n.4 (3d Cir. 2010) (noting Pennsylvania courts have looked to federal law regarding the FLSA for guidance in applying the PMWA). Because the FLSA is a remedial

statute, "exemptions to it are construed narrowly[,] i.e., against the employer." *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010); *see also Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 872 (3d Cir. 2015) (noting the employer bears the burden of proving "plainly and unmistakably" that its employees are exempt).

PPL contends Plaintiffs are exempt from the FLSA and the PMWA's overtime requirements under the exemption for persons employed in a bona fide administrative capacity. *See* 29 U.S.C. § 213(a)(1); 43 Pa. Stat. § 333.105(a)(5). The administrative exemption embraces any employee who is:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; *and*
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200 (emphasis added); *see also Smith*, 593 F.3d at 283 (noting Congress empowered the Secretary of Labor to "define and delimit" the terms of the FLSA's exemptions by issuing regulations, which have controlling weight unless found to be arbitrary, capricious, or manifestly contrary to the statute). If an employee's total annual compensation is at least $100,000, however, an employer need only prove the employee "customarily and regularly performs any one or more of the exempt duties or responsibilities of an . . . administrative . . . employee" to be entitled to judgment. *See* 29 C.F.R. § 541.601(a) (setting forth the "highly compensated employees" test). No such exemption exists under the PMWA. *See* 43 Pa. Stat. § 333.105.

PPL argues summary judgment is appropriate because undisputed evidence shows all Plaintiffs satisfy the three prongs of the administrative exemption to the FLSA and the PMWA.

Alternatively, PPL argues even if a genuine dispute exists as to the third prong of the exemption, summary judgment is still warranted as to a subset of the class consisting of highly compensated employees.

As for the first prong, there is no dispute Plaintiffs were compensated no less than $455 per week. Plaintiffs attempt to create a disputed issue of material fact about whether they were compensated on a salary basis, however, by arguing PPL subjects them to an actual practice of improper deductions. *See* 29 C.F.R. § 541.603(a) ("An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis."); *see also id.* § 541.603(b) ("If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made . . . ."). In determining whether an employer has such a practice, a court may consider: "the time period . . . of improper deductions; the number and location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for the deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions." *Id.* § 541.603(a).

Here, Plaintiffs point to only one instance of a partial-day deduction during the relevant time period. *See* Pls.' Resp. ¶ 74; *id.* Ex. 9 (identifying "regular" pay to John Galdo of only 75 hours for a two-week, 80-hour period on December 27, 2013). But a "one-time incident in which a . . . deduction is taken . . . does not defeat the salaried status of employees." *Auer v. Robbins*, 519 U.S. 452, 460 (1997) (internal citation and quotation marks omitted) (affirming the court of appeals' holding that plaintiffs were FLSA-exempt employees); *see also Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1195 (10th Cir. 2015) (finding no genuine issue of material fact

concerning the plaintiff's status as a salaried employee when the employer had, on one occasion, taken an improper deduction, but also had an express policy prohibiting such deductions).

Robert J. Carosiello's deposition testimony also does not create a genuine issue of material fact about whether PPL had a policy permitting improper deductions. Carosiello, PPL's Lead Business Analyst for Human Resources, never testified PPL had a practice of improper partial-day deductions. Carosiello testified it was possible for a salaried employee, who was out sick leave to be compensated for less than the full 80 hours during a pay period. Pl.'s Resp. Ex. 8 at 31:12-17, 33:5-16. He subsequently clarified PPL would pay an SO who had missed an entire workday due to illness and lacked enough sick leave to cover the entire day only the amount of sick leave available, but in the event an SO came to work and then left early, Carosiello was "not aware of any PPL policy or any instance that would not entitle the employee to be paid for the whole day even if they did not have any or enough sick hours." Def.'s Resp. in Supp. Mot. for Summ. J. Ex. A (Carosiello's errata sheet). Plaintiffs challenge the errata sheet as an attempt to substantively re-write Carosiello's testimony, but close examination of Carosiello's deposition testimony reveals the errata clarifies his deposition testimony.

Absent further evidence of an employer practice of improper deductions, the fact that one employee was subject to partial-day docking on one occasion during the relevant period does not create a disputed issue of material fact as to whether PPL compensated Plaintiffs on a salary basis. *See Auer*, 519 U.S. at 460; 29 C.F.R. § 541.603(a); *see also Kennedy v. Commw. Edison Co.*, 410 F.3d 365, 372 (7th Cir. 2005) (docking of small portions of three plaintiffs' wages was "not enough to show an actual practice or policy of treating as hourly the theoretically salaried").

As for the second prong, there is no dispute Plaintiffs' primary duties involve the performance of office or non-manual work. Plaintiffs argue, however, this prong is not satisfied

because their work does not directly relate to the management or general business operations of PPL or its customers, but, rather, constitutes production work. *See* 29 C.F.R. § 541.201(a) (distinguishing administrative work from "from working on a manufacturing production line"). "Work directly related to management or general business operations includes . . . work in functional areas such as . . . quality control; . . . safety and health; personnel management; . . . internet and database administration; legal and regulatory compliance; and similar activities." *Id.* § 541.201(b). In contrast, production employees "generate (i.e. 'produce') the very product or service that the employer's business offers to the public." *Renfro v. Ind. Mich. Power Co.*, 360 F.3d 512, 517 (6th Cir. 2004) (quoting *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997)). Whether work is administrative- or production-related "turns on whether the services or goods provided by the employee constitute the marketplace offerings of the employer, or whether they contribute to the running of the business itself." *In re Enter. Rent-a-Car Wage & Hour Emp't Practices Litig.*, No. 07-1687, 2012 WL 4356762, at *17 (W.D. Pa. Sept. 24, 2012) (citing *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002)).

It is undisputed that Plaintiffs' duties include evaluating and controlling PPL's electrical grid, documenting maintenance and work activities, and executing emergency procedures when needed. These duties contribute to the running of PPL's business, as they are ancillary to PPL's principal production activity of generating electricity. *Renfro*, 360 F.3d at 517-18 (affirming that power plant "planners" who "take job orders that identify work (maintenance or new construction) and prepare work packages that the plant's craft workers used to perform the work in the field" were administrative employees as their work was "ancillary to an employer's principal production activity"). These duties, moreover, fall within the functional areas identified by the Secretary of Labor's regulations as work directly related to management or general

business operations. *See Zelenika v. Commw. Edison Co.*, No. 09-2946, 2012 WL 3005375, at *13 (N.D. Ill. 2012) (holding duties such as monitoring electrical distribution systems and responding to problems in collaboration with field crews fell within 29 C.F.R. § 541.201(b)'s "functional areas," and further, while these duties related to power plant operations, the plaintiffs were not production employees as they did not "turn the wrenches themselves"). There is no genuine factual dispute that Plaintiffs' primary duties are non-manual and directly related to the management or general business operations of their employer. *See Haas v. Verizon N.Y., Inc.*, No. 13-8130, 2015 WL 5785023, at *5-8 (S.D.N.Y. Sept. 30, 2015) (holding, as a matter of law, installation and maintenance/construction local managers for Verizon, whose primary duties involved inspecting the work of technicians, performed office or non-manual work relating to the management or business operations of their employer).

As for the third prong, however, there is a genuine factual dispute regarding the amount of discretion and independent judgment Plaintiffs exercise in performing their primary duties. "To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance," 29 C.F.R. § 541.202(a), which requires "more than the use of skill in applying well-established techniques, procedures or specific standards used in manuals or other sources," *id.* § 541.202(e).

A number of Plaintiffs testified at deposition that their duties were so closely circumscribed by the OIs and checklists they were required to follow that their jobs were almost automated. A reasonable jury could credit this testimony and find Plaintiffs exercised no discretion in their positions and merely "appl[ied] well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." 29 C.F.R. § 541.704.

PPL argued at the final pretrial conference that this case is indistinguishable from *Zelenika v. Commonwealth Edison Co.*, in which an Illinois district court granted summary judgment in favor of the defendant on the plaintiffs' FLSA claims without reaching the independent judgment prong as the defendant had already satisfied the short highly compensated employee test. However, all the *Zelenika* plaintiffs were highly compensated within the meaning of the regulations. Significantly, moreover, the *Zelenika* court did not grant summary judgment as to the plaintiffs' Illinois Minimum Wage Law claim because there was a disputed issue as to whether the plaintiffs, who were dispatchers at a power plant, used discretion and independent judgment. The dispatchers in *Zelenika* had similar duties to Plaintiffs here. Their responsibilities included "monitor[ing] ComEd's power distribution system, oversee[ing] service to the system, and respond[ing] to customer complaints and power outages," 2012 WL 3005375, at *2, and, as in this case, "the record demonstrate[d] ComEd stressed the importance of following procedures" such that they could be merely "applying techniques and procedures rather than discretion and independent judgment," *id.* at *16. The Court agrees Plaintiffs in this case are similar to the dispatchers in *Zelenika*, but this similarity counsels against granting summary judgment in favor PPL, at least as to those Plaintiffs who do not meet the highly compensated employees test.

*Kennedy v. Commwealth Edison Co.*, 410 F.3d 365 (7th Cir. 2005), also cited by PPL, is likewise unpersuasive. While the court rejected the plaintiffs' argument that their work site, a nuclear power plant, was so exceedingly regulated that no employee could exercise independent judgment therein, the plaintiffs in that case did not claim to be as circumscribed by detailed OIs and checklists issued by their employer as Plaintiffs here. Further, the *Kennedy* court applied the version of the regulations in effect prior to the 2004 amendments. *See* 410 F.3d at 369 (noting the court did not apply the 2004 version). The 2004 amendments clarified the exemptions do not

cover employees who simply apply well-established procedures described in manuals within closely prescribed limits. *See* 29 C.F.R. § 541.704. For the same reasons, *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512 (6th Cir. 2004), does not mandate summary judgment as to the entire class here.

Finally, although summary judgment is not warranted as to the entire class, the Court agrees with PPL that it is warranted as to five of the Plaintiffs—William Clair, Kevin Ehritz, Harold Spiess, Kenneth Steward, and George Tenley—who are highly compensated employees. *See* 29 C.F.R. § 541.601(a); Def.'s Mot. for Summ. J. Declaration Linda Greenwald; *id.* Ex. A. (Plaintiffs' payroll history). As the Court is satisfied there are no material issues of disputed fact as to these Plaintiffs' (1) compensation on a salary basis and (2) primary duty being the performance of non-manual work directly related to PPL's management or general business operations, the Court will grant summary judgment as to these Plaintiffs' FLSA claim only.

An appropriate order follows.

BY THE COURT:

/s/  Juan R. Sánchez
Juan R. Sánchez, J.